UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22023-CIV-ALTONAGA/Reid

**ANGELICA BLOUNT-YEYE**,

    Plaintiff,
v.

**CITY OF HIALEAH**, *et al*.,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, City of Hialeah, Orlando Amador, Alain Pineiro, and Juan Diaz's Motion to Dismiss . . . [ECF No. 25]. Plaintiff, Angelica Blount-Yeye filed a Response [ECF No. 26]; to which Defendants filed a Reply [ECF No. 27]. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted.

**I. BACKGROUND**

Plaintiff is the mother of Timothy Starks, a Miami hip-hop artist known as "Baby Cino." (*See* Am. Compl. [ECF No. 20] ¶¶ 1, 5, 14). She sues Defendants, Orlando Amador, Alain Pineiro, Juan Diaz, and the City of Hialeah for misconduct that allegedly occurred after Starks was fatally shot on March 16, 2022 while traveling in a vehicle in Miami-Dade County. (*See id.* ¶ 8).

According to Plaintiff, emergency medical technicians ("EMTs") employed by the City — Amador, Pineiro, Diaz, "and/or others later to be identified" — arrived at the scene and found Starks "deceased or in critical condition in a prone position in the vehicle." (*Id.* ¶¶ 9–10). Plaintiff alleges the EMTs — or perhaps other unidentified individuals — moved and photographed Starks's body (*see id.* ¶¶ 11–12), and "caused and/or contributed to" the photographs' publication

on social media (*id.* ¶ 13). She further asserts that an unidentified person uploaded the images to SoundCloud as cover art for a "diss track" mocking Starks's death. (*Id.* ¶ 14). Plaintiff states that the images' publication caused her severe emotional distress and related physical symptoms, including pregnancy complications. (*See id.* ¶¶ 18–20). In addition, Plaintiff suggests the City bears responsibility because it failed to institute or train its employees on a policy "prohibiting the photography and dissemination of images of deceased individuals." (*Id.* ¶ 17).

Plaintiff brings six claims: a claim of intentional infliction of emotional distress ("IIED") against all Defendants ("Count I") (*see id.* ¶¶ 21–24); a claim of tortious interference with a corpse against all Defendants ("Count II") (*see id.* ¶¶ 25–31); two claims alleging substantive due process violations under 42 U.S.C. section 1983 — one against Amador, Pineiro, and Diaz, and the other against the City ("Counts III–IV") (*see id.* ¶¶ 32–63); and two claims of negligence and negligent infliction of emotional distress ("NIED") against the City ("Counts V–VI") (*see id.* ¶¶ 64–84).

Defendants move to dismiss each claim. (*See generally* Mot.; Reply). Plaintiff agrees the Court should dismiss her IIED claim (Count I) against the City — but not against Amador, Pineiro, Diaz — and the tortious-interference claim (Count II) against all Defendants. (*See* Resp. 9, 11).[1] She opposes dismissal of the remainder of her claims. (*See generally id.*).

## II. LEGAL STANDARDS

Several legal standards guide the Court's analysis of the issues raised.

***Rule 8(a) and Shotgun Pleadings***. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

(alteration adopted; other alteration added; citation and quotation marks omitted). Federal Rule of Civil Procedure 10(b) further requires that a pleading "state its claims or defenses in numbered paragraphs, each limited as far as practicable[.]" Fed. R. Civ. P. 10(b) (alteration added).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. As relevant here, the fourth category is a pleading that asserts "claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]" *Id.* at 1323 (footnote call number omitted; alteration added). The "unifying characteristic" of shotgun pleadings is they fail to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote call number omitted).

***Rule 12(b)(6)***. "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-

3

me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III. DISCUSSION

While Defendants' briefing is not a model of clarity (*see generally* Mot.; Resp.; Reply),[2] the Court can discern the following arguments: the Amended Complaint is a shotgun pleading; Plaintiff does not allege facts sufficient to state any claim; and Plaintiff's substantive due process claims fail because there is no constitutional right to control images of a deceased family member's

---

[2] In fact, each side's submissions lack structure and contain numerous deficiencies — including grammatical and spelling mistakes, unclear sentences, vague legal arguments, unnecessary space spent discussing irrelevant authorities, and limited citation to or analysis of relevant authorities. (*See generally* Am. Compl.; Mot.; Resp.; Reply). The Court urges counsel for each side to take greater care in future filings and consider seeking legal-writing support as needed. Should these issues persist, counsel may be referred to the Florida Bar or the District's Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance for counseling and any other action deemed appropriate.

corpse and the EMTs are entitled to qualified immunity (*see generally* Mot).[3]  As noted, Plaintiff opposes dismissal of each claim except Counts I and II, which she agrees to dismiss in part and in whole, respectively.  (*See generally* Resp.).  The Court concludes that dismissal is required.

### A. Shotgun Pleading

To start, the Amended Complaint falls within the fourth category of shotgun pleadings identified in *Weiland*: it states claims against multiple Defendants without specifying which acts are attributable to which Defendant.  *See* 792 F.3d at 1323 (footnote call number omitted); (*see generally* Am. Compl.).

In Count III, Plaintiff represents that one or more individual Defendant — and unidentified "members of the City" — "deprived Plaintiff of her substantive due process right to control the physical remains, memory, and death images of her deceased husband[4] and child."  (Am. Compl. ¶ 33; *see also id.* ¶¶ 32–52).  Plaintiff does not identify any particular Defendant who took any photograph, caused its dissemination, or otherwise engaged in the alleged misconduct.  (*See generally id.*).  Rather, Plaintiff aims her allegations at an amorphous group of Defendants and other unidentified individuals — leaving Defendants to guess who did what, when, and how.  (*See generally id.*).  That same imprecision runs throughout Count I, which is asserted against all Defendants without distinction.  (*See id.* ¶¶ 21–23).

---

[3] Defendants also spend several pages arguing Plaintiff lacks standing because she fails to state claims. (*See* Mot. 5–8).  This argument is legal error.  *See, e.g.*, *Okeelanta Corp. v. United States Army Corps of Eng'rs*, 132 F.4th 1320, 1332 (11th Cir. 2025) (rejecting arguments that "conflated the standing inquiry with the merits inquiry").  Remarkably, while Defendants concede the mistake in their Reply, they insist — without engaging in any analysis — that Plaintiff could theoretically "both lack standing and fail to state a claim." (Reply 3 (citations omitted)).  They speculate that "[s]hould it be revealed that Plaintiff is not the biological mother . . . a challenge to Plaintiff's standing would then be appropriate[.]"  (*Id.* (alterations added)).  These hypotheticals do not warrant discussion.

[4] This reference to Plaintiff's husband adds confusion to the already vague allegations.  (*See generally* Am. Compl.).  The Amended Complaint does not otherwise reference Plaintiff's husband.  (*See generally id.*).

Because Plaintiff's allegations fail to give Defendants adequate notice of the grounds for the claims against them (*see generally id.*); *Weiland*, 792 F.3d at 1323 (footnote call number omitted), dismissal is required.

### B. Failure to State Claims

Even if the Amended Complaint were not a shotgun pleading, its factual content would be too sparse to sustain any of its claims. (*See generally* Am. Compl.).

***Misconduct Allegations.*** Each of Plaintiff's claims must contain factual allegations sufficient to allow the Court to infer that the Defendant or Defendants engaged in misconduct that supports the elements of the claim. For instance, to state a claim of intentional infliction of emotional distress, a plaintiff must allege facts showing that the wrongdoer's conduct was intentional or reckless. *See McCrimmon v. Centurion of Fla., LLC*, No. 20-cv-36, 2021 WL 424348, at *8 (M.D. Fla. Feb. 8, 2021) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985); other citation omitted). Similarly, to state a negligence or NIED claim under Florida law, a plaintiff must allege a breach of a duty. *See Kennedy v. AmGuard Ins. Co.*, No. 24-cv-80815, 2025 WL 303715, at *3 (S.D. Fla. Jan. 22, 2025) (citations omitted), *report and recommendation adopted*, No. 24-80815-Civ, 2025 WL 305453 (S.D. Fla. Jan. 27, 2025).

The Amended Complaint does not include plausible allegations that any singular Defendant engaged in intentional or negligent conduct. (*See generally* Am. Compl.). Plaintiff's central assertion — that one or more individuals associated with the City "caused and/or contributed to" the photographs' publication (*id.* ¶ 13) — is neither tied to a specific actor nor supported by concrete facts, leaving the Court with the mere *possibility* that one or more Defendant acted unlawfully by taking a photo and publicizing it. *See Sinaltrainal*, 578 F.3d at 1261 (citation omitted).

In other areas of the Amended Complaint, Plaintiff's purported factual assertions are, in reality, nothing more than legal conclusions — which cannot support the claims. (*See* Am. Compl. ¶ 23 (alleging that Defendants' conduct was "intentional and/or reckless, outrageous, and beyond the bounds of human decency")); *see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citation omitted). Without concrete allegations tied to particular Defendants, Plaintiff's allegations do not support a plausible inference of tortious conduct by any Defendant. *See Twombly*, 550 U.S. at 555 (citation omitted).

The absence of misconduct allegations is also fatal to Plaintiff's constitutional claims — which require, among other elements, misconduct "sufficient to raise an ordinary tort to the stature of a constitutional violation." *Assi v. United States Dep't of Homeland Sec.*, No. 23-cv-23596, 2025 WL 1880338, at *10 (S.D. Fla. July 8, 2025) (quotation marks omitted; quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016)). And, as explained below, Plaintiff's substantive due process claim against the City falls short in other respects. (*See* Am. Compl. ¶¶ 53–63).

***Failure to Train.*** To state a substantive due process claim based on a municipality's failure to train employees or implement a policy, a plaintiff must allege that (1) the municipality inadequately trains or supervises its employees; (2) the failure to train or supervise is a city policy; and (3) the city policy caused the employees to violate a citizen's constitutional rights. *See Charles v. Chambers*, No. 23-11636, 2024 WL 4266842, at *6 (11th Cir. Sept. 23, 2024) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). A

failure to train constitutes a policy only if it evidences a deliberate indifference to the rights of the municipality's inhabitants. *See Gold*, 151 F.3d at 1350–51 (citations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Deliberate indifference occurs only if "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350–51 (citations omitted).

A plaintiff typically establishes this deliberate choice by "showing a *widespread pattern* of similar constitutional violations" by untrained employees. *Mingo v. City of Mobile*, 592 F. App'x 793, 799–800 (11th Cir. 2014) (emphasis added; citations omitted). An isolated incident is usually insufficient. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted); *see also Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir. 1990) (finding no liability for failure to train where a plaintiff failed to show a pattern of incidents that would put the city on notice of a need to train (citation omitted)); *Hall v. Smith*, No. 05-cv-68, 2005 WL 1871144, at *4–5 (M.D. Fla. July 27, 2005) (dismissing a complaint where a plaintiff offered no facts supporting the existence of a pattern of violations, instead referring only to a single incident).

In a narrow range of circumstances, a litigant may establish deliberate indifference without alleging a widespread pattern of incidents by showing that the need for training was sufficiently obvious. *See Mingo*, 592 F. App'x at 799–800 (citation omitted); *see also Gold*, 151 F.3d at 1352 (citations omitted); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997) (citation omitted). For instance, an obvious need for training on the constitutional limitations on the use of deadly force may exist when a city provides police officers with firearms and knows the officers will need to arrest fleeing felons. *See Gold*, 151 F.3d at 1352 (citing *City of Canton*, 489 U.S. at 390 n.10); *see also, e.g.*, *Ratlieff v. City of Ft. Lauderdale*, 748 F. Supp. 3d 1202, 1267–69 (S.D. Fla. 2024) (finding there was an obvious need to train police officers on constitutional limits

to the use of less-lethal weapons in crowd control).

Plaintiff does not provide facts that would allow the Court to infer deliberate indifference under either method. She fails to allege a widespread pattern of constitutional violations, offering only a singular incident in support of her failure-to-train claim: the alleged publication of the photos of Starks's corpse. (*See generally* Am. Compl.). And Plaintiff does not allege facts that support an inference of an obvious need for the City to train EMTs not to publicize images of corpses. (*See generally id.*). For instance, the Amended Complaint contains no factual assertions showing that EMTs regularly take and publish photographs in a manner likely to result in recurring constitutional violations (*see generally id.*) — unlike armed police officers who regularly use firearms in situations that inherently involve the risk of constitutional violations, *see City of Canton*, 489 U.S. at 390 n.10; *Ratlieff*, 748 F. Supp. 3d at 1267–69.

In her Response, Plaintiff addresses Defendants' arguments about this pleading deficiency by simply stating it is "obvious" that "someone in Plaintiff's position has a [c]onstitutional right to control the images of her family member's dead body." (Resp. 8 (alteration added)). This statement is not only conclusory — it also conflates awareness of need for a policy with the existence of a constitutional right.

In sum, Plaintiff's factual allegations, taken as true, do not support an inference that the City was deliberately indifferent to the need for a policy or training. Because the Amended Complaint does not meet Rule 8's plausibility standard as to any claim (*see generally* Am. Compl.); *see Iqbal*, 556 U.S. at 679 (citation omitted), dismissal is required.[5, 6]

---

[5] Given the vague nature of Plaintiff's allegations, the Court does not reach Defendant's qualified-immunity arguments. *See Jones v. City of Dothan*, 121 F.3d 1456, 1459 (11th Cir. 1997) (noting that qualified-immunity analysis is a "fact-intensive inquiry" (citations omitted)).

[6] In the interest of judicial efficiency and because the Court will allow one further opportunity for amendment, the Undersigned briefly addresses Defendants' argument that there is no substantive due

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, City of Hialeah, Orlando Amador, Alain Pineiro, and Juan Diaz's Motion to Dismiss . . . **[ECF No. 25]** is **GRANTED**.  Plaintiff has until August 29, 2025 to submit an amended complaint.  No further amendment will be permitted.

**DONE AND ORDERED** in Miami, Florida, this 15th day of August, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

process right to control images of a deceased family member's corpse.  (*See* Mot. 8–9; *see also generally id.*; Reply).  Plaintiff cites no binding case law explicitly recognizing such a right (*see generally* Mot; Resp; Reply), and the Court is not aware of Eleventh Circuit case law addressing the issue.  Still, persuasive legal authority suggests a parent has a substantive due process right to control a deceased child's death images — one that flows from well-established history and tradition, and from "the well-established substantive due process right to family integrity."  *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012); *see also generally Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157 (2004).