UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22023-CIV-ALTONAGA/Reid

ANGELICA BLOUNT-YEYE,

    Plaintiff,
v.

CITY OF HIALEAH, et al.,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, City of Hialeah (the "City"), Orlando Amador, Alain Pineiro, and Juan Diaz's Partial Motion to Dismiss . . . [ECF No. 30], filed on September 12, 2025. Plaintiff, Angelica Blount-Yeye filed a Response [ECF No. 31]; to which Defendants filed a Reply [ECF No. 32]. The Court has considered the parties' written submissions and applicable law. For the following reasons, the Motion is granted in part.

**I. BACKGROUND**

This civil rights action stems from the aftermath of a fatal March 16, 2022 shooting of Miami-based hip-hop artist Timothy Starks — professionally known as "Baby Cino." (*See* Second Am. Compl. ("SAC") [ECF No. 29] ¶¶ 1, 5, 13).[1] Plaintiff, Starks's mother, alleges that emergency medical technicians ("EMTs") employed by the City — Amador, Pineiro, and Diaz (the "Individual Defendants") — arrived at the scene and found Starks "deceased or in critical condition in a prone position in the vehicle." (*Id.* ¶¶ 9–10). According to Plaintiff, the Individual Defendants took photographs of Starks's corpse (*see id.* ¶ 11), and then either directly uploaded

---

[1] Plaintiff's SAC is incorrectly titled a Third Amended Complaint. The Court will refer to the operative pleading as the SAC.

the images to social media or shared them with another person for the purpose of posting them online (*see id.* ¶ 12). She further asserts that the images "were used as artwork for a diss track" mocking Starks's death. (*Id.* ¶ 13).

Plaintiff suffered "significant emotional distress and mental anguish" because of the images' publication, including pregnancy complications. (*Id.* ¶¶ 14, 18). Plaintiff asserts the City bears responsibility because it failed to implement or train its employees on a policy "prohibiting the photography [sic] and dissemination of images of deceased individuals." (*Id.* ¶ 16).

Plaintiff brings eight claims for relief: three claims of intentional infliction of emotional distress ("IIED") against the Individual Defendants ("Counts I–III") (*see id.* ¶¶ 20–34); three claims of substantive due process violations under 42 U.S.C. section 1983 against the Individual Defendants ("Counts IV–VI") (*see id.* ¶¶ 35–91); and two negligence claims against the City ("Counts VII–VIII") (*see id.* ¶¶ 92–109). Defendants move to dismiss Counts IV through VIII, asserting the section 1983 claims are barred by qualified immunity and the others fail to state plausible claims for relief. (*See generally* Mot.; Reply).

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint

that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court construe the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III.  DISCUSSION

### A.  Counts IV, V, and VI: 42 U.S.C. Section 1983 Claims

Defendants move to dismiss Plaintiff's section 1983 claims on the ground that the Individual Defendants are entitled to qualified immunity. (*See* Mot. 3–9).[2] The Court first addresses whether the Individual Defendants acted within the scope of their discretionary authority, then whether Plaintiff plausibly alleges her constitutional rights were violated, and finally whether those rights were clearly established when the alleged incident occurred.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). To be entitled to qualified immunity, a government official must first demonstrate "he

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted). When a defendant acts within the scope of his or her discretionary authority, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted).

Plaintiff can show qualified immunity is not appropriate by establishing "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quotation marks and citation omitted). These requirements may be addressed "in any order." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (citation omitted). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation marks and citations omitted).

### i. Discretionary Authority

The parties agree the Individual Defendants were acting within the scope of their discretionary authority. (*See* Mot. 4; *see also* SAC ¶¶ 39–40, 44, 58–59, 63, 77–78, 82). The burden thus shifts to Plaintiff "to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (citation omitted); *see also Johnston v. Carlson*, No. 24-10862, 2025 WL 1927532, at *3 (11th Cir. July 14, 2025).

### ii. Violation of a Constitutional Right

Again, in Counts IV, V, and VI, Plaintiff alleges the Individual Defendants, respectively, violated her substantive due process rights by photographing her deceased son's body and causing those images to be circulated online. (*See* SAC ¶¶ 11–12, 36, 39–41, 55, 58–60, 74, 77–79). The

Court next considers whether — accepting these allegations as true — Plaintiff possessed a substantive due process right, and the Individual Defendants plausibly violated it.

A "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires [the Court] to exercise the utmost care whenever [it is] asked to break new ground in this field.'" *Reno v. Flores*, 507 U.S. 292, 302 (1993) (alterations added and adopted; quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)); *see also Windwalker v. Governor of Ala.*, 579 F. App'x 769, 773 (11th Cir. 2014) ("[The Court] analyze[s] a substantive due process claim by first crafting a careful description of the asserted right." (alterations added; citation and quotation marks omitted)). A careful description "of the fundamental interest at issue" ensures that the Court "narrowly frame[s] the specific facts before [it] so that [it] do[es] not stray into broader 'constitutional vistas than are called for by the facts of the case at hand.'" *Doe v. Moore*, 410 F.3d 1337, 1344 (11th Cir. 2005) (alterations added; quoting *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1240 (11th Cir. 2004)). Here, Plaintiff asserts that she possessed "a clearly established constitutional right . . . in controlling the images of her [deceased] child's remains[,]" and Defendants do not contest that characterization. (SAC ¶¶ 45, 64, 83 (alterations added); *see also generally* Mot.). The Court thus adopts Plaintiff's framing of the asserted substantive due process right at issue.

The Court must next "determine whether the asserted right is "one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Moore*, 410 F.3d at 1343 (quoting *Williams*, 378 F.3d at 1239). On this question, *National Archives and Records Administration v. Favish*, 541 U.S. 157 (2004), is instructive. In *Favish*, the Supreme Court considered whether the Freedom of Information Act's

5

(the "FOIA[′s]") privacy exemption — which bars disclosures that would constitute an unwarranted invasion of personal privacy — extends to a decedent's family seeking to withhold his death images. *See generally id.*; *see also* 5 U.S.C. § 552(b)(7)(C). The Court held that the "FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images." *Id.* at 170.

The Court emphasized it "ha[d] little difficulty . . . in finding in our case law and traditions the right of family members . . . to limit attempts to exploit pictures of [a] deceased family member's remains for public purposes." *Id.* at 167 (alterations added). And the Court recognized that the "well-established cultural tradition acknowledging a family's control over the body and death images of the deceased has long been recognized at common law." *Id.* Other courts have found that the long-standing tradition of respecting family members' privacy in death images recognized at common law is also protected by substantive due process. *See, e.g.*, *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012); *see also Brookings v. City of Philadelphia*, No. 24-cv-470, 2024 WL 1889242, at *6–7 (E.D. Pa. Apr. 30, 2024); *cf. Donohue v. Hoey*, 109 F. App'x 340 (10th Cir. 2004) (denying qualified immunity on right to privacy grounds where police officer showed intimate nude photographs of the plaintiff and his murdered spouse to individuals not involved in the murder investigation).

In *Marsh v. County of San Diego*, the Ninth Circuit considered whether the Constitution protects a parent's right to control images of a deceased child from unwarranted public disclosure by the government. *See* 680 F.3d at 1154. Applying the Supreme Court's reasoning in *Favish*, the Ninth Circuit court concluded that this right flows from history and tradition, and from "the well-established substantive due process right to family integrity." *Id.* The court also emphasized that "public display of death images are [sic] the kind of conduct that is likely to cause the family

profound grief and therefore 'shocks the conscience' and 'offend[s]' the community's sense of fair play and decency." *Id.* at 1155 (alteration adopted; quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)).

Defendants insist that *Marsh* is inapplicable because, unlike this case, the deceased child there was a minor; therefore, they argue the court's decision was "base[d] on the fundamental interests of a parent in choosing how to care for a child in life." (Mot. 6 (alteration added); *see also* Reply 2); *see generally Marsh*, 680 F.3d at 1154. The Court is not persuaded that *Marsh* should be read so narrowly. Although the deceased in *Marsh* was a minor, the Ninth Circuit also grounded its decision in a more general "individual interest in avoiding disclosure of personal matters[.]" *Marsh*, 680 F.3d at 1154 (alteration added; citation omitted). *Marsh* relied on multiple cases extending beyond the parent-minor relationship that recognized a common-law right of family members over a decedent's death images. *See id.* at 1153–54 (citing *Melton v. Bd. of Cnty. Comm'rs of Hamilton Cnty.*, 267 F. Supp. 2d 859, 865 (S.D. Ohio 2003); *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 874 (2010)). There is little reason to believe that the profound grief caused by the public dissemination of a son or daughter's death images ceases to exist merely because, as here, the deceased was not a minor.[3]

For the very reasons the Supreme Court set forth in *Favish* and the Ninth Circuit in *Marsh*, the Court concludes that the right to control the public dissemination of a child's death images is protected by substantive due process. In sum, Plaintiff alleges that the Individual Defendants photographed her son's corpse "[w]ithout authorization and in violation of privacy and decency"

---

[3] Defendants also contend that *Marsh* failed to set forth a "careful description" of the asserted substantive due process right in that case. (Mot. 5–6; *see* Reply 3); *see also Reno*, 507 U.S. at 302. The Court finds no basis to conclude that *Marsh*'s framing of the asserted substantive due process right was overly broad or not carefully described, particularly when, as stated, Defendants do not object to Plaintiff's framing of the substantive due process right asserted in this case (*see supra* 5).

7

and caused those photographs to be circulated on social media (SAC ¶¶ 11–12 (alteration added)); thereby violating her constitutional right to control the public dissemination of her son's death images (*see id.* ¶¶ 41, 60, 79). The dissemination of these images "caused her significant emotional distress and mental anguish[,]" as well as pregnancy complications. (*Id.* ¶¶ 14, 18 (alteration added)). Accepting these allegations as true, Plaintiff has adequately alleged the violation of a constitutional right.

### iii. Clearly Established Law

The Court next considers whether the right to control the public dissemination of a son or daughter's death images was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. "'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "To determine whether a right is clearly established, [the Court] ask[s] whether it would be clear to a reasonable [government] official that his or her conduct was unlawful in the situation confronted." *De Veloz v. Miami-Dade Cnty.*, 756 F. App'x 869, 880 (11th Cir. 2018) (alterations added). "[T]he clearly established law standard is a demanding one." *Cantu v. City of Dothan*, 974 F.3d 1217, 1235 (11th Cir. 2020) (alteration added; citations omitted).

A plaintiff can demonstrate that a constitutional right was "clearly established" in various ways. *See Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (citation omitted). First, the plaintiff may show that "a materially similar case has already been decided." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (quotation marks and citation omitted); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002) ("When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a

government official cannot clearly establish the law for the circumstances facing that government official[.]" (alteration added)). Second, the plaintiff may "point to a broader, clearly established principle that should control the novel facts of the situation." *Terrell*, 668 F.3d at 1255 (alterations adopted; quotation marks and citations omitted). Third, the plaintiff may "show that [her] case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citation omitted); *see also Nute v. White*, 152 F.4th 1311, 1318 (11th Cir. 2025) (noting that "clearly established law" can be shown through "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law" (citation omitted)).

Plaintiff argues that the right at issue in this case was clearly established under the first and third categories. (*See* Resp. 5–8). As to the first category, Plaintiff asserts that *Favish* established an individual's right to control the dissemination of her son's death images. (*See id.* 5–7). Although *Favish* supports Plaintiff's assertion of a constitutional right to control the dissemination of a son's death images, it does not establish that the right was clearly established because the decision rested on statutory interpretation rather than constitutional analysis. *See Favish*, 541 U.S. at 160. The inquiry into whether a right is "clearly established" is a rigid one, and under the first category, the undersigned may only consider cases from the Supreme Court, Eleventh Circuit, or the highest court of the state where the case arose. *See Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997). Plaintiff cites no other applicable authority, so the Court turns to the third category.

Cases finding clearly established law under the third category are "few and far between" given that a plaintiff "must show that a defendant's conduct 'lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was

readily apparent to the official, notwithstanding the lack of case law.'" *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1324 (11th Cir. 2024) (alteration adopted; quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012)).

One such example is *De Veloz v. Miami-Dade County*, where prison medical officials were accused of misgendering an inmate despite knowing that doing so would place her in an all-male facility and jeopardize her safety. 756 F. App'x at 872–75. There, the Eleventh Circuit reversed the undersigned's grant of qualified immunity and dismissal of the plaintiffs Eighth Amendment deliberate indifference claims. *See id.* at 881. Relying on the third "clearly established law" category, the Eleventh Circuit held that, even without direct precedent, "every reasonable [prison official] would have known that wrongfully misclassifying a biological female as a male inmate and placing that female in the male population of a detention facility was unlawful." *Id.* at 880. Similarly, in *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009), the Eleventh Circuit found it clearly established, "even in the absence of case law[,]" that repeatedly tasering someone over a two-minute span without attempting to arrest or detain him was "so unnecessary and disproportionate" that no reasonable officer could have believed it was lawful. *Id.* at 907–08 (alteration added).

Having carefully reviewed the allegations here, the Court concludes Plaintiff satisfies the third category's stringent standard. It should have been readily apparent to every reasonable on-duty EMT at the time of this incident that photographing a corpse *and* causing the images to circulate on social media — especially without consulting the decedent's parents — constitutes egregious and unlawful conduct. (*See* SAC ¶¶ 11–12); *see also Favish*, 541 U.S. at 168 ("Family members have a personal stake in . . . objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the

10

deceased person who was once their own." (alteration added)). The Court thus finds that none of the Individual Defendants is entitled to dismissal based on qualified immunity.

### B. Count VII: Vicarious Liability (Alternatively Pleaded Claim)

In addition to the section 1983 claims asserted against the Individual Defendants, Plaintiff alternatively asserts a vicarious liability claim against the City if the Individual Defendants are not found to have intentionally caused the dissemination of Starks's death images. (*See* Count VII). Defendants move to dismiss, arguing Count VII (1) fails to sufficiently allege the City owed Plaintiff a duty of care or breached any such duty; (2) does not satisfy the physical impact rule; and (3) improperly asserts a negligence claim predicated on allegedly intentional conduct. (*See* Mot. 10–13).

As no determination has been made as to whether the Individual Defendants acted intentionally, it is premature to address Defendants' arguments concerning Plaintiff's alternative claim. *See Dixie Elec. Co-op v. Citizens of State of Ala.*, 789 F.2d 852, 857–58 (11th Cir. 1986) ("Federal courts may not render advisory opinions on abstract or hypothetical propositions of law. . . . A federal court may not, consistent with the Constitution, entertain a proceeding such as this one, that merely . . . allows for the adjudication of potential issues that have not actually arisen." (alterations added; citation omitted)).

### C. Count VIII: Negligence (Failure to Train and Implement Policy)

Plaintiff also alleges that the City failed to train the Individual Defendants on the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, section 264, 110 statute 1936; and failed to implement a policy regarding the dissemination of death images. (*See* SAC ¶¶ 101–09). The City argues that Plaintiff's claim is barred by sovereign immunity. (*See* Mot. 13–15).

Under Florida law, governmental entities are immune from tort liability for actions involving their "discretionary" functions, such as the "development and planning of governmental goals and policies." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001); *see also Mercado*, 407 F.3d at 1162 ("Although [Florida Statute section] 768.28(1) waives sovereign immunity for acts which would create liability for a private person, such waiver extends only to the government's operational, not discretionary acts." (alteration added; citation and quotation marks omitted)). "A city's decision regarding how to train its offic[ials] and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis*, 260 F.3d at 1266 (alteration added).

Plaintiff does not allege the City was negligent in training the Individual Defendants under its existing policies; rather, it alleges the policies themselves were inadequate. (*See* SAC ¶¶ 101–09). Plaintiff's claim therefore challenges discretionary governmental functions protected by sovereign immunity. *See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1119 (11th Cir. 2005); *see also Mercado*, 407 F.3d at 1162 ("Because [plaintiff] only challenges the content of the [training] program, not the way in which the program was implemented, [the City] is entitled to sovereign immunity[.]" (alterations added)). Plaintiff's negligence claim based on the City's alleged failure to implement HIPAA training is thus dismissed.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, City of Hialeah, Orlando Amador, Alain Pineiro, and Juan Diaz's Partial Motion to Dismiss **[ECF No. 30]** is **GRANTED in part**. Count VIII is **DISMISSED without prejudice**.

CASE NO. 25-22023-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 11th day of November, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record